UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CARRIE E. THOMPSON,

    Plaintiff,

v.                                                     Case No: 6:15-cv-1891-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits under the Act. Upon review of the record and after due consideration, the Commissioner's final decision is **REVERSED** and the case is **REMANDED**.

## Background

Plaintiff was 35 years old on her alleged disability onset date (R.163), with a college education and work experience as a pay by mail representative, pricing manager in a grocery store, produce clerk, cashier in a grocery store, receiving manager, telephone customer service, building cleaner, laborer, and medical technician (R. 179, 197). Plaintiff alleged that she was disabled due to (1) chronic pain in her low back and

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed .R. Civ. P. 73.

neck; (2) headaches; (3) pain in her shoulder, left arm, and hand; (4) fibromyalgia; and (5) fatigue (R. 45-46, 178).

Plaintiff's application was denied initially and on reconsideration, and she requested and received an administrative hearing before an Administrative Law Judge ("ALJ"). The ALJ issued an unfavorable decision on March 28, 2014 (R. 17). Plaintiff's request for review was denied by the Appeals Council on September 10, 2015 (R. 1). Accordingly, the ALJ's March 2014 decision finding Plaintiff not disabled is the final decision of the Commissioner.

Having exhausted all available administrative remedies, Plaintiff timely filed this action (Doc. 1). The parties have filed a Joint Memorandum (Doc. 20), Plaintiff has filed a Supplemental Memorandum (Doc. 21), and the matter is now ripe for review.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis (R. 20-29). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her

September 3, 2010 alleged onset date (R. 22). At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine with radiculopathy, headaches, fibromyalgia, and osteoarthritis of the bilateral hands (20 CFR 404.1520(c)) (R. 22). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that medically meets or equals the severity of any of the impairments listed in 20 CFR Part 404, Subpat1 P, Appendix 1 (R. 23). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work, finding she could:

> lift and carry, push or pull, up to 20 pounds occasionally, ten pounds frequently, stand or walk for up to six hours, and sit for up to six hours of an eight hour workday. She can occasionally, balance, stoop, kneel, crouch, and crawl and occasionally climb ramps or stairs. However, she cannot climb ladders, ropes, or scaffolds. Further, she should avoid hazards such as unprotected heights and dangerous machinery, as well as temperature extremes and full-body vibration.

(R. 24). At step four, the ALJ found that Plaintiff was not able to perform any of her past work (R. 27), but at step five, the ALJ concluded that there is other work in the national economy that Plaintiff could perform, and she was not disabled (R. 27-28).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff raises two issues: 1) whether the ALJ properly considered all the evidence when evaluating her testimony pursuant to SSR 12-2p, given Plaintiff's diagnosis of fibromyalgia; and 2) whether the ALJ gave proper weight to the opinions of Plaintiff's physicians. The issues are intertwined, due to the nature of the impairment.

SSR 12-2p discusses what an individual must show to establish her fibromyalgia ("FM") constitutes a medically determinable impairment ("MDI"). See SSR 12-2p, 2012 WL 3104869, at *2-3. The ruling requires evidence of all of the following: (1) a history of widespread pain; (2) at least eleven positive tender points or the repeated manifestation at least six fibromyalgia symptoms; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. Id. Once it is established that a person has the

MDI of fibromyalgia, the ruling provides that "we will consider it in the sequential evaluation process to determine whether the person is disabled." Id. at *5.

In evaluating a person's statements about his or her symptoms and functional limitations, the Commissioner follows a two-step process:

> A. *First step of the symptom evaluation process*. There must be medical signs and findings that show the person has an MDI(s) which could reasonably be expected to produce the pain or other symptoms alleged. FM which we determined to be an MDI satisfies the first step of our two-step process for evaluating symptoms.
>
> B. *Second step of the symptom evaluation process*. Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

Id. The ruling provides that before an ALJ finds a person with fibromyalgia disabled, the ALJ should "ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." Id. at *2.

Plaintiff contends that the ALJ failed to comply with this ruling because: 1) the ALJ ignored the opinion of rheumatologist Dr. Stacy Davis that all other disorders that might cause similar symptoms were excluded; 2) the ALJ wrongly insisted on objective

- 5 -

evidence of the impairment; and 3) the ALJ did not consider the entire record, as required. Upon review, I agree, in part.

Plaintiff's contention that the ALJ ignored Dr. Davis' opinion is not accurate. See R. 26 (discussing the opinion of Dr. Davis). The ALJ reviewed and credited Dr. Davis' diagnosis of fibromyalgia and found that Plaintiff's fibromyalgia was a medically determinable severe impairment at step two of the sequential evaluation (R. 22).

But, it is apparent that the ALJ failed to consider the entire record. The ALJ credited Plaintiff's allegations of pain and limitation, to some degree, noting that Plaintiff "clearly" has chronic pain and discomfort and that evidence suggests her pain and symptoms increase upon seasonal change or colder temperatures (R. 25). Nonetheless, the ALJ determined that "in analyzing the physical medical evidence of record, the objective findings in this case are comparatively underwhelming and do not independently bolster or support the claimant's underlying allegations or overall testimony." Id. While this finding, standing alone, would not be sufficient to discount Plaintiff's allegations of disabling limitations from her fibromyalgia, the ALJ made numerous *additional* findings, noting:

> Further, the record shows that the claimant alleges a 15-year history of low back pain that radiates into her legs, hips, and lower extremities (Exhibit 3E, p. 3, 4). She also describes an ongoing history of throbbing neck pain that radiates into her upper extremities and head, causing headaches (Exhibit 3E, p. 3). However, the evidence of record indicates that the claimant performed substantial gainful activity throughout much of this time period wherein she alleges that such debilitating pain existed (Exhibit 3D; 4D; 2E, p. 2, 3). In fact, much of the objective findings relative to her cervical and lumbar spine existed in 2006, the year of her highest net earnings over the past 15 years (Exhibit 4D; IF, p. 1, 3). Consequently, the undersigned finds substantial evidence to show that despite chronic cervical and lumbar pain, the claimant has displayed the ability to perform substantial

- 6 -

gainful activity in spite of chronic pain. Furthermore, the worsening of pain she reports is not supported by the objective findings or nature of treatment sought throughout the record (Exhibit IF, p. 1, 3; 3F, p. 3; 7F; 16F).

Additionally, the treatment options pursued by the claimant appear to have been relatively successful in restoring or salvaging functionality to a degree that she can continue activities and work within reasonable parameters. She has opted for prescription medication management, specifically morphine and methadone to treat her chronic pain (Exhibit 7F; 15F; 16F; 19F). Although the treatment record shows some ups and downs or times of breakthrough pain, overall with pain medication treatment, she is generally 'stable' and remains 'functional' with the current and the time-released morphine medication treatment. Specifically, her response to medical treatment has been described as "excellent" and "effective" and or 'stable' (Exhibit 7F, p. 1, 3, 4 - 8; 8F, p. 2; 16F, p. 2). She also has shown a positive response to physical therapy and trigger point injections (Exhibit 7F, p. I; 16F, p. 4, 6, 7, 9). Notes from January 2013, state that 'she benefits from present treatment' and that her fibromyalgia symptoms are 'well-controlled' (Exhibit 16F, p. 9). Similarly, for late 2013, treatment notes show her condition to be 'stable' and find her to be doing 'reasonably well with present treatment' (Exhibit 19F, p. 5, 6, 9, 10). In light of these findings, the undersigned finds that with proper treatment and care, the claimant's functional ability is maintained such that a return to light exertional work is possible and reasonable.

Moreover, despite her allegations of continuous ever-present pain, clinical records have on numerous occasions, found her to be in 'no acute pain or distress', to have no muscle atrophy, to possess a normal gait and mobility, and to have normal handgrip strength (Exhibit 5F, p. 1, 3; 10F, p. 11, 12; 17F, p. I ). Interestingly, the claimant has not necessarily adhered to all medical advice or followed through with referrals from her physician, which consequently undermines the credibility of her allegations as to the intensity and persistence of her symptoms. The claimant alleges debilitating neck and back pain that radiates essentially all over her body and disabling headaches; nonetheless, she did not continue or follow-through with a subsequent physical therapy referral, did not show up or report to Omnicare for nearly a year, and she did not continue or seek out further interventional pain-management or therapy, according to clinical notes (Exhibit I 2F; I 4F; 17F). Wherefore, the undersigned finds significant

- 7 -

> evidence to suggest or indicate that the claimant was content or satisfied with the efficacy of the current medication management treatment and that such mitigation of pain was sufficient or adequate to allow daily functioning and the performance of light exertional activities on a sustained basis.

(R. 25-6).

SSR 12-2p provides: "If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." Here, after finding that objective medical evidence did not corroborate Plaintiff's allegations, the ALJ considered the evidence and discredited Plaintiff's allegations of disabling pain based on: 1) substantial gainful activity throughout much of the time period wherein she alleges debilitating pain; 2) the nature of treatment sought; 3) the success of that treatment; 4) lack of follow through on referrals; and 5) findings on examination of no acute pain or distress and other inconsistencies. In making these findings, it is apparent that the ALJ did not consider the entire record, as required by SSR 12-2p.

*Substantial Gainful Activity*

The ALJ relied upon Plaintiff's earnings record, particularly in 2006, to support the finding that Plaintiff performed substantial gainful activity throughout much of this time period, in spite of chronic pain. But, Plaintiff produced evidence from her ex-employer that verified that during this time period her employer made *numerous* accommodations for her impairments—including allowing Plaintiff to lie down in the back of her car for an extended period during her shift, adjusting her hours to allow for frequent and extended

breaks, use of special equipment (pillows, cushions, ice for her back), allowance for positional changes at will, and allowances for frequent absences from work (R. 257-58). The ALJ did not meaningfully discuss this pertinent evidence[2] which shows that during this time period, Plaintiff functioned in a real word environment at a level well below her RFC as determined by the ALJ.

*The nature of the treatment sought and results obtained*

The ALJ cites to selective portions of the treatment records to support her finding that Plaintiff was "relatively successful in restoring or salvaging functionality to a degree that she can continue activities and work within reasonable parameters." The ALJ relies on snippets of the treatment notes that suggest Plaintiff was "stable," "functional" and doing "reasonably well." (R. 26). As discussed more thoroughly below, however, the decision does not reflect that the ALJ considered the entirety of the treatment notes.

The ALJ cites the treatment notes at Exhibits 7F, 8F and 16F as support for her finding that Plaintiff's "response to medical treatment has been described as 'excellent' and 'effective' and or 'stable' (Exhibit 7F, p. 1, 3, 4 - 8; 8F, p. 2; 16F, p. 2)." (R. 26). While the notes contain those words, the ALJ did not set forth or consider the *context* of those words, as explained in the treatment notes. The cited pages, for example, *also* include the following findings made by Plaintiff's long time treating pain management specialist Dr. Arthur Horn:

- "Unfortunately, at this point she is essentially nonfunctional and can [not] even do simple things such as standing for short periods of time without significant

---

[2] The sole reference to this exhibit in the ALJ's decision is a statement that a "third party attests that [Plaintiff] must change positions frequently to afford any measure of comfort or pain mitigation. (Exhibit ...17E)." (R. 25). The Court finds this to be an inaccurate summary of the many accommodations the employer allowed to make employment possible for Plaintiff.

discomfort." (R. 318; Ex. 7F, p. 3);

- "She remained stable but does note that she has been a very modest stability and improvement" and "she remains limited" (R. 321, Ex. 7F, p. 6);

- "She remains clinically stable but unfortunately is only doing reasonably well from a pain management standpoint. She still has a lot [of] breakthrough pain and functionality for activities of daily life has been met but you cannot due to [sic] much more on a day-to-day basis" and she is "clearly limited from a functional standpoint." (R. 323; Ex. 7F at 8)

- "Unfortunately she continues to have considerable issues with pain and inability to function on a day-to-day basis." (R. 326; Ex. 8F, p. 2);

- "She remains medically stable but unfortunately has not made much progress in Selassie. However she remains functional for basic activities of daily life once again still limited." (R. 385; Ex. 16F, p. 3).

A finding that a condition is "stable" is not a finding that the condition is not limiting. Stability over a period of time implies that a condition is no worse *and no better.* Similarly, while the record includes sporadic findings of "reasonable control" of her symptoms, such findings are often accompanied by a clarifying comment that Plaintiff's fibromyalgia is under reasonable control "at low-level functioning." (See R. 400; Ex. 19F p. 6).

The Court recognizes that the ALJ gave other reasons for discrediting Plaintiff's statements of limitation, such as a lack of follow through on recommendations for additional treatment. It is also true that Plaintiff carries the burden to prove she is disabled. Nonetheless, the Eleventh Circuit has observed that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is therefore "a lack of

objective evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir.2005) (per curiam); Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 63 (11th Cir. 2010). Due to the nature of this impairment, once an ALJ determines that a claimant has fibromyalgia, it is not enough to pluck a word or two out of the record, combine it with a lack of objective evidence, and pronounce her fit for duty. The ruling requires consideration of "all of the evidence in the case record." This includes a fair review of the treatment records and the statements of third parties, such as Plaintiff's ex-employer. As the administrative decision here does not reflect such consideration, remand is warranted.

Although this conclusion is dispositive, the Court notes that Plaintiff has also objected to the evaluation of the opinions of her physicians. Treating physician Dr. Horn issued an opinion that Plaintiff was severely limited in her ability to function (R. 356-359). The ALJ discounted the opinion, finding it to be "in contrast or slightly contradictory to the history and record of treatment he has rendered over the years," which "in general finds the claimant to be responsive to treatment, independent, and functional with stable or controlled symptoms" (R. 27).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician

presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c)(2); Crawford v. Comm'r, of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to controlling weight). Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel. As remand is required for additional consideration of the treatment records, the ALJ should revisit her findings with respect to the opinions offered by the physicians, including Dr. Horn.

## Conclusion

Upon consideration of the foregoing:

(1) The Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing.

(2) The Clerk is **directed** to enter judgment accordingly and **CLOSE** the file.

(3) The deadline for Plaintiff to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after she receives notice from the Social Security Administration of the amount of past due benefits awarded.

(4) Upon receipt of such notice, Plaintiff shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

**DONE** and **ORDERED** in Orlando, Florida on December 29, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record